# 22-20459

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

THE SATANIC TEMPLE, INCORPORATED
*Plaintiff-Appellant*

*v.*

TEXAS HEALTH AND HUMAN SERVICE COMMISSION;
CECILE YOUNG
*Defendants-Appellees*

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division;
Hon. Charles Eskridge, District Judge, presiding

District Court Case no. 4:21-cv-00387

## THE SATANIC TEMPLE'S OPENING BRIEF



**Matt Kezhaya** | matt@crown.law
Ark. # 2014161 | direct: (479) 431-6112
Minn. # 0402193 | general: (612) 349-2216

100 S. Fifth St., Ste. 1900, Minneapolis, MN 55402

# CERTIFICATE OF INTERESTED PERSONS

Appellant certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.

**1: Plaintiff-Appellant**

The Satanic Temple, Inc.

**2: Defendants-Appellees**

Texas Commission of Health and Human Services;
Cecile Young,

**3: Counsel for Plaintiffs-Appellants**

Matthew Kezhaya, Kezhaya Law PLC (dba "Crown Law")

**4: Counsel for Defendants-Appellees**

Ryan G. Kercher, Deputy First Assistant Attorney General
Christopher Hilton, Deputy Chief, General Litigation Division
Heather L. Dyer, Deputy Attorney General for Civil Litigation

*–s/Matt Kezhaya*

## Statement regarding oral argument

If the First Amendment protects anything, it must protect a minority religion from laws rooted in the holy texts of an adverse majority. At issue is the denial of a motion for preliminary injunction wherein the order evades ruling on the controlling question. The Court should entertain oral argument, at 15 minutes per side.

# Table of contents


Certificate of interested persons ........ 2

1: Plaintiff-Appellant ........ 2

2: Defendants-Appellees ........ 2

3: Counsel for Plaintiffs-Appellants ........ 2

4: Counsel for Defendants-Appellees ........ 2

Statement regarding oral argument ........ 3

Table of contents ........ 4

Table of authorities ........ 5

Jurisdictional statement ........ 8

Issue presented ........ 9

The District Court should have granted the injunction. ........ 9

1. The District Court evaded a ruling on the merits. ........ 9

2. Even a temporary deprivation of a First Amendment right is irreparable harm, per se ........ 9

3. Texas offered no countervailing interest, and the District Court found none. ........ 9

4. The public's interest is served by compelling governmental adherence to the Constitution. ........ 9

Statement of the case ........ 10

Summary of the argument ........ 17

Argument ........ 19

Standard of review ........ 19

1: The District Court evaded a ruling on the merits. ........ 19

2: Even a temporary deprivation is irreparable harm. ........ 27

3: Young will suffer no harm ........ 28

4: The public interest supports the injunction. ........ 29

Conclusion ........ 30
Certificate of service ........ 31
Certificate of compliance ........ 31

## TABLE OF AUTHORITIES

### Cases

*Canal Auth. of Fla. v. Callaway*,
489 F.2d 567 (5th Cir. 1974) ........ 27

*Elrod v. Burns*,
427 U.S. 347 (1976) ........ 27

*Fulton v. City of Philadelphia, Pennsylvania*,
141 S.Ct. 1868 (2021) ........ 24

*Ingebretsen on behalf of Ingebretsen v. Jackson Public Sch. Dist.*,
88 F.3d 274 (5th Cir. 1996) ........ 29

*Jacobson v. Commonwealth of Massachusetts*,
197 U.S. 11 (1905) ........ 21

*Kennedy v. Bremerton Sch. Dist.*,
142 S.Ct. 2407 (June 27, 2022) ........ 22, 24, 26

*Lakedreams v. Taylor*,
932 F.2d 1103 (5th Cir. 1991) ........ 20

*Larson v. Valente*,
456 U.S. 228 (1982) ........ 23

*Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279 (5th Cir. 2012) ........ 27

*Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833 (1992) ........ 21

*Productos Carnic, S.A. v. Cent. Am. Beef and Seafood Trading Co.*, 621 F.2d 683 (5th Cir. 1980) ........ 20

*Roe v. Wade*, 410 U.S. 113 (1973) ........ 22, 23

*Sherbert v. Verner*, 374 U.S. 398 (1963) ........ 23

*Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707 (1981) ........ 23

*W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) ........ 24

*Willey v. Harris Cnty. Dist. Att'y*, 27 F.4th 1125 (5th Cir. 2022) ........ 19, 20, 27, 28

*Wisconsin v. Yoder*, 406 U.S. 205 (1972) ........ 23

**Statutes**

28 USC § 1292 ........ 8

28 USC § 1331 ........ 8

Tex. Health & Safety Code Ann. § 171.0122 ........ 25

Tex. Rev. Civ. Stat. Ann. art. 4512.6 ........................................ 25

**Treatises**

Lucian Dhooge, *The Equivalence of Religion and Conscience*,
31 Notre Dame J.L. Ethics & Pub. Pol'y 253 (2017) .............. 23

Sybil Shainwald, *Reproductive Injustice in the New Millennium*,
20 Wm. & Mary J. Women & L. 123, 130 (2013) .............22, 25

Wright & Miller,
*Federal Practice and Procedure* § 2948.1 (2d ed. 1995) ................ 27

**Constitutional Provisions**

U.S. Const. Amend. I ............................................................ 23

## JURISDICTIONAL STATEMENT

The District Court has subject matter jurisdiction under 28 USC § 1331. The Satanic Temple's complaint raised § 1983 claims asserting unconstitutional enforcement activity by a Texas State official, which is a federal question. The Satanic Temple also moved for a temporary restraining order and a preliminary injunction, which was denied by written order on September 7, 2022. ROA.13. The notice of appeal was filed on September 7, 2022. ROA.11; compare FRAP 4(A)(1) (30-day deadline to notice an appeal); 28 USC § 1292(a)(1) (the denial of a motion for preliminary injunction is immediately appealable).

# ISSUE PRESENTED

**The District Court should have granted the injunction.**

1: The District Court evaded a ruling on the merits.

- *Kennedy v. Bremerton Sch. Dist.*,
  142 S.Ct. 2407, 2431 (June 27, 2022)

- *Jacobson v. Commonwealth of Massachusetts*,
  197 U.S. 11 (1905)

2: Even a temporary deprivation of a First Amendment right is irreparable harm, *per se*.

- *Elrod v. Burns*,
  427 U.S. 347 (1976)

3: Young would have suffered no harm.

4: The public's interest is served by compelling governmental adherence to the Constitution.

- *Ingebretsen on behalf of Ingebretsen v. Jackson Public Sch. Dist.*,
  88 F.3d 274, 280 (5th Cir. 1996)

## STATEMENT OF THE CASE

For just shy of 50 years, enforcement officials in Texas begrudgingly fulfilled an elemental governmental promise: Church and State should be separated. This case began as an objection to a bureaucratic toehold, one designed to erode a fundamental right. Partway through, that "fundamental right" became a felony offense. ROA.46.

The Satanic Temple, Inc. ("**TST**") is a nontheistic religion whose membership openly defies the authority of God and the Church. ROA.23. To the congregants of TST, Satan deserves veneration as a revolutionary antihero who stood up against impossible odds to seek justice and egalitarianism for himself and others. TST propounds the Seven Fundamental Tenets. Id. Of importance here:

> (III) One's body is inviolable, subject to one's own will alone.
>
> (V) Beliefs should conform to one's best scientific understanding of the world. One should take care never to distort scientific facts to fit one's beliefs.

ROA.53.

The congregants of TST have survived sincerity and religiosity tests by the IRS and by the District of Arizona. ROA.23. For an academic analysis of TST's religious *bona fides*, *see* Prof. Joseph P. Laycock's *Speak of the Devil: How The Satanic Temple is Changing the Way We Talk about Religion* (Oxford University Press, 2020).

As a sometimes-unexpected byproduct of a lustful linkup, a non-viable fetus presents some of TST's membership with the life-altering choice of whether to undertake the ultimate sacrifice of becoming a mother. TST's membership do not invest within that choice any divine implications, as adherents of Christianity do, because TST's membership does not subscribe to self-deprecation as a life-style. ROA 51; compare Sybil Shainwald, *Reproductive Injustice in the New Millennium*, 20 Wm. & Mary J. Women & L. 123, 135 (2013) ("Puritan attacks on abortion were based on the notion that female morality could be upheld by instilling fear of pregnancy in women.") (citing Lawrence Lader, *Abortion* 90 (1966)). In stark contrast to Christian doctrine, TST's membership celebrates (rather than vilifies) our natural desires, including consensual sexual

intercourse. Id; see also Tenet III. In this absence of belief that "life" begins at conception, TST is like our ancient forebears and unlike the Christian lawmakers, who dominate Texas politics. NOA.48-50.

In furtherance of TST's viewpoint that one's actions should be guided by scientific reasoning and free will, not divine authority, TST offers its membership a protective rite to cast off the Christian-pushed notions of guilt, shame, and mental discomfort entailed in the decision to terminate an unwanted pregnancy. NOA.51. A necessary implement for the ritual is the termination of an unwanted pregnancy. NOA.52. No part of the ritual involves acquiescence to medically-unnecessary sonograms, the forced listening to results, or waiting periods. Id.

This case began with a member's objection to Texas laws that required an assertedly-unnecessary sonogram, a legal requirement to listen to the results, and a legally-required waiting period. NOA.22. More particularly, TST and the member asserted a hybrid

Free Speech/Free Exercise theory, that the objected-to regulations interfered with religiously expressive activity and was therefore presumptively unconstitutional. NOA.26. TST and the member also asserted a theory in line with *Casey*. Id.

The member also requested an emergency temporary restraining order, to enjoin the government from enforcing the regulations against the clinic and to enjoin the clinic from enforcing the regulations. NOA.5. But that application was denied because it took the member three weeks to progress from "ignorance about the pregnancy" to "filed the complaint and moving papers." NOA.6. As if the unwanted pregnancy was a pre-scheduled event; legal assistance standing by, papers in hand.

Then certiorari was granted in *Dobbs*. As a result, the District Court demurred on the religious question for favor of waiting to see what came of the privacy question. NOA.55 Pursuant to the District Court's order, the case was stayed. Id.

Seven months later, *Dobbs* was issued and what began as a

fundamental right for the past two generations was to become the predicate for a felony offense. Tex. Rev. Civ. Stat. art. 4512.1 *et seq*. Per the District Court's order prior order, the parties agreed to a briefing schedule wherein TST would address the threat that Texas's soon-to-be-enforced abortion prohibition will pose to TST and its congregants. NOA 55. The July 8, 2022, joint status report also noted that TST will move for preliminary injunctive relief on August 22, 2022. Id. The District Court agreed with the proposed deadlines and entered an order establishing them. Id.

After the order established the deadlines, Texas Attorney General Ken Paxton issued an advisory letter notifying prosecutors that Texas's trigger law was to take effect on August 25, 2022–three days after the agreed deadline for TST's motion for preliminary injunction. NOA.46. The trigger law made abortion a felony offense, and further subjected all who could safely perform the medical procedure to civil penalties as well as losing their medical licensure. Id. Attorney General Paxton put the public on notice that he will do his "duty" to enforce the abortion ban. Id.

As promised, TST brought an amended complaint which continued to press the Free Speech / Free Exercise problem of State officials interfering with ritual activity, and added an Establishment Clause attack. NOA.22. TST also brought a Rule 65 motion to immediately prevent Texas officials from enforcing the abortion ban against TST's membership. NOA.29. The District Court took no action on the motion, so Texas's trigger law went into effect as scheduled.

On August 30, TST requested a ruling on the "constitutional crisis," reciting that TST's congregants "are subjected to an ongoing risk of persecution because we think and act differently from majoritarian religious beliefs" furthered by the offensive statutes. NOA.16. Still, the District Court took no action.

On September 5, the State official charged with enforcing the abortion ban had a deadline to respond to the motion for preliminary injunction. NOA.55. That deadline lapsed with no opposition papers. Still, the District Court took no action.

On September 7, the District Court finally ruled on the constitutional crisis; and denied the motion for preliminary injunction. NOA.13. The District Court took exception with the form, brevity, and substance of TST's brief, but dodged its merits. NOA.15. (declining to address the "substantial likelihood of success on the merits" prong of the analysis). Rather than issue findings or conclusions to support that TST is *not* entitled to the relief moved for, the District Court simply chose to deny the unopposed motion. Id.

## SUMMARY OF THE ARGUMENT

Both sides of the "debate" around Texas's decision to criminalize relied solely upon a sacred text to criminalize the predicate for The Satanic Temple's ritual. The Satanic Temple sued and moved for a temporary restraining order and a preliminary injunction to preclude the unconstitutional enforcement activity. The State actor had prior notice of the forthcoming motion and a pre-agreed deadline to respond, yet did not respond in opposition. The District Court not only denied the motion, it punted on the case-controlling first prong of the analysis.

The congregants of The Satanic Temple were harmed by a State's compelled adherence to a foreign religion's shaming ritual. The Establishment Clause clearly prohibits the official preference for a particular religion, and yet the sole justification for the challenged regulations lay within the stated desire to please the Pope. The Free Speech and Free Exercise Clauses clearly prohibit State intrusion into the sacred rites of a religion, and yet Young continues to enforce laws which purport to prohibit the ritual. These laws are

not generally applicable, as they entail individualized exemptions based on the particular reasons for the otherwise-prohibited conduct.

The District Court chuffed at the brevity of the "brief" in support of the motion. The brief said neither more nor less than required. The District Court took offense at the inclusion of visual aid and prose. The brief was designed to be read by scholar and layman, alike. No known rule requires that a brief be boring or uninspired.

# Argument

"It's so overt it's covert."

– Sherlock Holmes, wearing an obvious disguise, *Sherlock Holmes: a Game of Shadows* (Warner Bros. Pictures 2011).

## Standard of review

Because a First Amendment case raises intermixed questions of law and fact, this appeal is reviewed *de novo*. *Willey v. Harris Cnty. Dist. Att'y*, 27 F.4th 1125, 1128–29 (5th Cir. 2022). A preliminary injunction is proper when the following elements are established:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Id.*, at 1129.

## 1: The District Court evaded a ruling on the merits.

The first inquiry in a Rule 65 motion is to consider the likelihood

of success on the merits. *Willey*, 27 F.4th at 1129. But the District Court evaded a ruling on the merits. NOA.15. ("The first factor needn't be addressed at present, because Plaintiffs don't even attempt to establish the second, third, or fourth factors). It was reversible error to punt on the first prong because the answer guides the analysis of all the remaining questions. Had the District Court considered the first prong of the established test, as required, it would have found that the first prong supports the motion.

The first prong does not require that the movant prove his case. *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n. 11 (5th Cir. 1991). Even some likelihood of success can be enough to support the issuance of a preliminary injunction. *See Productos Carnic, S.A. v. Cent. Am. Beef and Seafood Trading Co.*, 621 F.2d 683, 686 (5th Cir. 1980) ("Where the other factors are strong, a showing of some likelihood of success on the merits will justify temporary injunctive relief.")

The merits of this case pertain to the constitutional right of a minority religion to be free from laws designed to coerce adherence to

the majority viewpoint. NOA.48. (quoting Pope Francis and the Bible as sole support for Texas's trigger law). In the words of the Texas politicians, this case raises "the most personal, gut-wrenching decision regardless of whichever side you're on," NOA.49, on which there is no "more visceral, more difficult" question of conscience. NOA.50; *see also Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 852 (1992) (recognizing the "zone of conscience and belief" as grounds for the right of women–not the State–to choose), overruled on other grounds by *Dobbs v. Jackson Women's Health Org.*, 213 L. Ed. 2d 545 (June 24, 2022) (penumbra-rights case).

The right of bodily autonomy is well-recognized in our constitutional jurisprudence. *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 29 (1905) (recognizing that "sphere within which the individual may assert the supremacy of his own will, and rightfully dispute the authority of any human government … to interfere with the exercise of that will.") Unlike communicable diseases or conscription into the military, *see id.*, the choice of whether to terminate an unwanted pregnancy has no effect on the "welfare, comfort or

safety of the many." *Id.*; *see also Roe v. Wade*, 410 U.S. 113, 132 (1973) (recognizing the prevalence of abortion at common law); Sybil Shainwald, *Reproductive Injustice in the New Millennium*, 20 Wm. & Mary J. Women & L. 123, 127 (2013) ("the common law afforded women the right to have an abortion").

Because no third parties have any recognizable rights at issue, the congregants' ritual lies well within that sphere of influence outside the authority of any human government: the right to engage in religious expression. *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2431 (June 27, 2022) (noting the "double protection," under the Free Speech and Free Exercise clauses). The religious expression here is two-fold: (1) an identification with and subscription to the Third and Fifth Tenets (NOA.51-52) and (2) a vehement rejection of the Christian viewpoints that "abortion is a terrible thing" and "A heartbeat is life." NOA.48.

Personal moral decisions, like the Satanic Abortion Ritual, lie uniquely within the realm of religion. *Roe*, 410 U.S. at 130

("Ancient religion did not bar abortion."); see also Lucian Dhooge, *The Equivalence of Religion and Conscience*, 31 Notre Dame J.L. Ethics & Pub. Pol'y 253, 246-280 (2017); *e.g., Sherbert v. Verner*, 374 U.S. 398 (1963); *Wisconsin v. Yoder*, 406 U.S. 205 (1972); *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707 (1981). Christianity and TST have come to different answers as to whether an abortion is morally acceptable. Christians are free to undergo unwanted births out of respect for what they perceive as God's will. See U.S. Const. Amend. I. But it lies wholly outside the State's power to compel adherence to the Christian viewpoint. *Larson v. Valente*, 456 U.S. 228, 244 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another.") To TST's congregants, sex is to be enjoyed (not vilified); and, if an unwanted pregnancy results, the member is best situated to make a decision for themselves, free from State-induced efforts to undermine that conscience-based decision.

Because TST's religious expression is impinged upon by a State's regulation, the question next turns to whether that burden is

"neutral" or "generally applicable." *Kennedy*, 142 S.Ct. at 2422. The burden is not neutral because it arises from a preponderance of Texas politicians' belief in the biblical passage "Thou has granted you life." NOA.48 (misquoting Job 10:12 (KJV)–should be "Thou hast granted *me* life"). While the Vatican is doubtlessly quite pleased with the Texas legislature's subservience (see id., quoting Pope Francis), here in America we abide by the Constitution and not a foreign theocracy. *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943) ("One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they de-pend on the outcome of no elections.")

Nor is the burden generally applicable. A burden is not generally applicable when the government provides for "individualized exemptions" based upon the "particular reasons for a person's conduct." *Fulton v. City of Philadelphia, Pennsylvania*, 141 S.Ct. 1868, 1877 (2021). Texas's complained-of requirement to listen to the sonogram results explicitly contemplates the "particular reasons" for

choosing not to listen: if the pregnancy is unwanted because of "sexual assault, incest or other violation of the Penal Code" or if the fetus has an irreversible medical condition, no need for the congregant to listen to the sonogram. Tex. Health & Safety Code Ann. § 171.0122. But a congregant's religious objection to listening to the results is given no credence. Id. Likewise, the general bar against abortion is exempted if "for the purpose of saving the life of the mother." Tex. Rev. Civ. Stat. Ann. art. 4512.6. But the statute remains unswayed by an abortion given out of respect for a congregant's objection to undergoing some foreign religion's puritanical shaming ritual. Id.; compare Sybil Shainwald, *Reproductive Injustice in the New Millennium*, 20 Wm. & Mary J. Women & L. 123, 135 (2013) . Under long-standing jurisprudential considerations, these individualized exemptions based on the particular reasons for the otherwise-prohibited conduct require a religious exemption.

So, too, is the Satanic Abortion Ritual protected by the fundamental right of free speech, as the ritual identifies one to be a congregant of TST. *Kennedy*, 142 S.Ct. at 2431 (noting the dual Free

Speech / Free Exercise protections for people "praying quietly over their lunch, wearing a yarmulke to school, or for offering a midday prayer during a break before practice.") While a majority of Texas politicians may take offense to the notion that Satanists live openly as equals in the State, we as a society have long resolved that "tolerating diverse expressive activities has always been part of learning how to live in a pluralistic society." Id.

TST's Satanic Abortion Ritual is a *bona fide* religious ceremony which celebrates the congregants' autonomy from God and the Church. Because Young's enforcement activity interfered with the congregants' ability to express their religion as they see fit, her enforcement activity is presumptively unconstitutional. Because Young bears the burden of persuasion to justify her enforcement activities, the first prong was satisfied. It was reversible error for the District Court to deny the motion, particularly given that Young did not even bother to respond in opposition to the motion. The Court should reverse and remand for entry of a temporary restraining order and a preliminary injunction.

### 2: Even a temporary deprivation is irreparable harm.

The second inquiry in a Rule 65 motion is to consider whether irreparable harm would ensue absent the relief sought. *Willey*, 27 F.4th at 1129. The District Court declined the motion without entering any findings of facts or conclusions of law to support a finding that no irreparable harm would ensue. NOA.13-15.

The purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). The irreparable-harm requirement is satisfied when there is a violation of First Amendment rights. *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also* Wright & Miller, *Federal Practice and Procedure* § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").

As addressed in § 1, the challenged regulations impede TST's First Amendment right to undergo the Satanic Ritual Abortion free from State interference. Because even minimal interference unconstitutionally treads upon the sole right of religion to determine how its ceremonies should proceed, the second prong is satisfied. The District Court reversibly erred in denying the motion. The Court should reverse and remand for entry of a temporary restraining order and preliminary injunction.

### 3: Young would have suffered no harm.

The third inquiry in a Rule 65 motion is to weigh the harm threatened to the plaintiff, in absence of the prayed-for relief, as against the harm to the defendant if the relief is granted. *Willey*, 27 F.4th at 1129. When the District Court denied the motion, the congregants faced a deprivation of their First Amendment right to exercise their religion as they see fit, forced unwanted pregnancies and birth, and civil and criminal penalties. Had the District Court granted the motion, Young would have had less work to do. Further, if Young had

any concerns about harm, she could have filed an opposition to the motion. She didn't. It was reversible error for the District Court to deny the motion.

### 4: The public interest supports the injunction.

Injunctions preventing the violation of constitutional rights are "always in the public interest." *Ingebretsen on behalf of Ingebretsen v. Jackson Public Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996). As addressed in the first prong, the congregants' First Amendment rights are being violated by Young's enforcement activity. By definition, the public interest is furthered by the prayed-for motion to prevent this constitutional violation.

Further, the strong majority of Texas residents believe abortions are appropriate in some circumstances. Only 15% of Texas residents believe there should never be an exception to laws preventing abortion.[1] Granting this TRO upholds the overwhelming sentiment held

---

[1] R. Oxner, 78% of Texas Voters Think Abortion Should Be Allowed in Some Form, UT Poll Shows, *Tex. Trib.* (May 4, 2021),

by the public that abortion laws should have special exceptions, especially those presented the rare circumstance of a minority religion needing access to the necessary implements of its rituals.

## CONCLUSION

A minority religion moved to enjoin the enforcement activity of a State actor, pursuant to newly-enforceable laws, which deprived it of its ability to exercise its religion as it sees fit. The State actor did not object to the motion. The District Court not only denied the motion, it evaded the case-dispositive question. The Court should reverse and remand for entry of a temporary restraining order and a preliminary injunction.

---

https://www.texastribune.org/2022/05/04/texas-abortion-ut-poll/(last accessed Dec. 5, 2022).



**s/Matt Kezhaya** — matt@crown.law
Ark. # 2014161 — direct: (479) 431-6112
Minn. # 0403196 — general: (612) 349-2216

100 S. Fifth St., Ste. 1900, Minneapolis, MN 55402

## CERTIFICATE OF SERVICE

**NOTICE IS GIVEN** that I, Matt Kezhaya, efiled the foregoing document by uploading it to the Court's efile system on December 19, 2022 which sends service to registered users, including all other counsel of record in this cause. Paper service to follow upon the Clerk's instruction.

*–s/Matt Kezhaya*

## CERTIFICATE OF COMPLIANCE

This document complies with the page limitation of FRAP 32(a)(7)(B) (a principal brief may not exceed 13,000 words) because, excluding the parts of the document exempted by FRAP 32(f), this document contains **4,095** words.

This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because this document has been prepared in a proportionally spaced typeface using MS Office 365 in 14pt "Calisto MT" font. Headers are in 15pt "Century" font.

The electronic version of the brief and addendum have been scanned for viruses and are virus-free.

*– s/Matt Kezhaya*