# No. 22-20459

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

The Satanic Temple, Incorporated,

*Plaintiff – Appellant,*

v.

Texas Health and Human Service Commission; Cecile Young,

*Defendants – Appellees.*

---

On Appeal from the United States District Court for the Southern District of Texas, Houston Division; 4:21-CV-387

---

## BRIEF OF APPELLEES TEXAS HEALTH AND HUMAN SERVICE COMMISSION AND CECILE YOUNG

---

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant
Attorney General

**SHAWN COWLES**
Deputy Attorney General
for Civil Litigation

**CHRISTOPHER D. HILTON**
Chief- General Litigation Division

**RYAN G. KERCHER**
Deputy Chief – General Litigation
Division

**HEATHER L. DYER**
Assistant Attorney General – General
Litigation Division

*Counsel for Defendants - Appellees*

# CERTIFICATE OF INTERESTED PERSONS

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Defendants-Appellees, as governmental parties, need not furnish a certificate of interested persons.

/s/ Ryan G. Kercher
**RYAN G. KERCHER**
*Counsel of Record for*
*Defendants-Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellees do not request oral argument. Oral discussion of the facts and applicable precedent would not aid the Court's decisional process.

# TABLE OF CONTENTS

Contents                                                                Pages(s)

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS .......................................................................................... iv

TABLE OF AUTHORITIES ...................................................................................... v

JURISDICTIONAL STATEMENT .......................................................................... 1

STATEMENT OF THE ISSUES ............................................................................... 2

STATEMENT OF THE CASE ................................................................................... 2

SUMMARY OF THE ARGUMENT ......................................................................... 3

STANDARD OF REVIEW ........................................................................................ 5

ARGUMENT .............................................................................................................. 5

I.   Appellant's Lack of Standing and Appellees' Immunity ................................ 5

   A.   Appellant Cannot Establish Standing ....................................................... 5

      1.   Appellant has alleged no legally cognizable injury. ............................ 7

      2.   Appellant does not and cannot establish any alleged injury
           is traceable to Appellees. .................................................................... 8

      3.   Appellant does not and cannot establish the requested relief
           would redress its grievances. .............................................................. 9

   B.   Appellees Are Immune. ............................................................................ 10

II. Denial of a Preliminary Injunction Was Not an Abuse of the District Court's Discretion.............................................................................12

   A.   Appellant Cannot Show a Substantial Likelihood of Success on the Merits.......................................................................................13

     1.  Count 1: Hybrid Free Speech/Free Exercise Claim. ...............13

       a.  Appellant fails to establish it is likely to succeed on a free exercise claim.......................................................................14

       b.  Appellant fails to establish it is likely to succeed on a Hybrid Free Speech/Free Exercise claim. .........................................15

     2.  Count 2: Establishment Clause Claim. ..................................16

   B.   Appellant's Unnecessary Delay Precludes Establishing Irreparable Harm ...............................................................................18

   C.   The Alleged Injury Does Not Outweigh the Harm an Injunction Will Cause and Is Not in the Public Interest ...............................22

CONCLUSION ...........................................................................................24

CERTIFICATE OF SERVICE ..................................................................26

CERTIFICATE OF COMPLIANCE.........................................................26

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Air Evac EMS, Inc. v. Tex. Dep't of Ins.*,
  851 F.3d 507 (5th Cir. 2017) ...............................................................18

*Alabama & Coushatta Tribes v. Big Sandy Sch. Dist.*,
  817 F.Supp. (E.D. Tex. 1993) ...............................................................22

*Ashcroft v. ACLU*,
  542 U.S. 656 (2004) .............................................................................20

*Barber v. Bryant*,
  860 F.3d 345 (5th Cir. 2017) ....................................................... 14, 15

*Benisek v. Lamone*,
  *138 S. Ct. 1942 (2018)*............................................................ 19, 25, 26

*Bluefield Water Ass'n, Inc. v. City of Starkville*,
  577 F.3d 250 (5th Cir. 2009) ...............................................................19

*Braunfeld v. Brown*,
  366 U.S. 599 (1961) .............................................................................22

*Byrum*,
  566 F.3d .............................................................................................20

*Castro*,
  2021 WL 1393857 ...............................................................................13

*Christian Legal Soc'y v. Walker*,
  453 F.3d 853 (7th Cir. 2006) ....................................................... 29, 30

*City of Austin v. Paxton*,
  943 F.3d 993 (5th Cir. 2019) ....................................................... 16, 17

*City of Dallas v. Delta Airlines, Inc.*,

    847 F.3d 279 (5th Cir. 2017) ................................................................19

*Ctr. for Inquiry, Inc. v. Warren*,

    845 F. App'x 325 (5th Cir. 2021).......................................................16

*Dobbs v. Jackson Women's Health Org.*,

    213 L. Ed. 2d 545, 142 S. Ct. 2228 (2022) ................................. passim

*Elrod v. Burns*,

    427 U.S. 347 (1976) ...........................................................................28

*Employment Division v. Smith*,

    494 U.S. 872 (1990) ...........................................................................21

*Enterprise Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,

    762 F.2d 464 (5th Cir. 1985) .............................................................19

*Envt. Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,

    968 F.3d 357 (5th Cir. 2020) .............................................................15

*Ex parte Young*,

    209 U.S. 123 (1908) ...........................................................................18

*Gonannies, Inc. v. Goupair.com, Inc.*,

    464 F.Supp.2d 603 (N.D. Tex. 2006) ................................................26

*Harris v. McRae*,

    448 U.S. 297 (1980) ..................................................................... 23, 24

*Heller v. Doe*,

    509 U. S. 312 (1993) ..........................................................................24

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,

    49 F.3d 1551 (Fed. Cir. 1995) ...........................................................28

*Ingebretsen on Behalf of Ingebretsen v. Jackson Pub. Sch. Dist.*,

    88 F.3d 274 (5th Cir. 1996) ...............................................................29

*Lewis v. Continental Bank Corp.*,

   494 U.S. 472 (1990) ...............................................................8, 10

Lujan v. Defenders of Wildlife,

   504 U.S. 555 (1992) ............................................................ 14, 16

*Mazurek v. Armstrong*,

   520 U.S. 968 (1997) (per curiam .......................................19

*McGowan* v. *Maryland*,

   366 U.S. 420 (1961) ...............................................................23

*Miss. State Democratic Party v. Barbour*,

   529 F.3d 538 (5th Cir. 2008) ...............................................13

*Moore v. Brown*,

   868 F.3d 398 (5th Cir. 2017) ...............................................12

*Morris v. Livingston*,

   739 F.3d 740 (5th Cir. 2014) ...............................................17

*OCA-Greater Houston v. Tex.*,

   867 F.3d 604 (5th Cir. 2017) ...............................................13

*Okpalobi v. Foster*,

   244 F.3d 405 (5th Cir. 2001) ...............................................17

*Opulent Life Church v. City of Holly Springs*, *Miss.*,

   697 F.3d 279 (5th Cir. 2012) ...............................................28

*Polymer Techs., Inc. v. Bridwell*,

   103 F.3d 970 (Fed.Cir.1996) ...............................................28

*Raj v. La. State Univ.*,

   714 F.3d 322 (5th Cir. 2013) ...............................................17

*Robinson v. Hunt County*,

   921 F.3d 440 (5th Cir. 2019) ...............................................12

*Shapiro v McManus*,
203 F.Supp.3d 579 (D. Md. 2016)........................................................26

*Simmons v. Smith*,
774 F. App'x 228 (5th Cir. 2019).........................................................17

*Society of Separationists, Inc. v. Herman*,
939 F.2d 1207 (5th Cir.1991) ..............................................................22

Spokeo, Inc. v. Robins,
136 S. Ct. 1540 (2016).........................................................................14

*Stringer v. Whitley*,
942 F.3d 715 (5th Cir. 2019) ...............................................................12

*United Indus. Corp. v. Clorox Co.*,
140 F.3d 1175 (8th Cir. 1998)..............................................................20

*United States v. Lee*,
455 U.S. 252 (1982) .............................................................................21

*United States v. O'Brien,*
391 U. S. 367 (1968) ............................................................................24

*White v.  Carlucci*,
862 F.2d 1209 (5th Cir. 1989)..............................................................12

*Wisconsin v. Yoder*,
406 U.S. 205 (1972) .............................................................................22

## Statutes

28 U.S.C. § 1292(a)(1)..............................................................................8

28 U.S.C. § 2107(a) ...................................................................................8

42 U.S.C. § 1983........................................................................................8

Article III of the United States Constitution .................................... passim

Tex. Gov't Code § 531.021(a) .................................................................17

TEX. HEALTH & SAFETY CODE § 170A.002 ..............................................18

TEX. REV. CIV. STAT. art. 4512.1-4, 4512.6.........................................18

TEX. HEALTH & SAFETY CODE § 170A.001 ................................ 15, 16, 24

## Rules

FED. R. APP. P. 28(a)(2) ........................................................................ iv

FED. R. APP. P. 28(a)(3) .........................................................................v

FED. R. APP. P. 32(a)(5) ........................................................................32

FED. R. APP. P. 32(a)(6) ........................................................................32

FED. R. APP. P. 32(a)(7)(B) ...................................................................32

FED. R. APP. P. 32(f)..............................................................................32

## Other Authorities

11A Wright & Miller, Fed. Prac. & Proc. § 2948.1 (3d ed.) ...................25

## JURISDICTIONAL STATEMENT

The Court has appellate jurisdiction over Plaintiff-Appellant The Satanic Temple's ("Appellant")1 appeal under 28 U.S.C. § 1292(a)(1). The District Court's order denying Plaintiff-Appellant's motion for preliminary injunction was entered on September 7, 2022. ROA. 392-394. Appellant's notice of interlocutory appeal, ROA. 395, was filed within the 30-day window in 28 U.S.C. § 2107(a).

Appellant asserts subject matter jurisdiction in the District Court by citing to 42 U.S.C. § 1983. ROA. 268. A party's standing under Article III of the United States Constitution, however, is a jurisdictional prerequisite to suit. *See, e.g., Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). Defendants-Appellees Texas Health and Human Services and Executive Commissioner Cecille Young ("Appellees") argue here (as they did in their Motion to Dismiss, ROA. 269-276) Appellant does not have Article III standing because it has no cognizable injury, shows no traceability, and cannot establish that Appellees can redress the alleged injuries. *See* Part I, infra at 5-11.

---

1 Plaintiff-Appellant's Complaint and request for a temporary restraining order and preliminary injunction listed both "The Satanic Temple, Inc." and "Ann Doe" as Plaintiffs in the matter. ROA. 267. However, based on Appellant's Notice of Appeal and Brief, only The Satanic Temple is listed as an Appellant. See ROA. 399, Appellant's Brief at 2. Thus, Appellees will treat this appeal as though only The Satanic Temple is an appellant.

## STATEMENT OF THE ISSUES

The issues presented are:

1. Does Plaintiff-Appellant have Article III standing to raise its First Amendment hybrid rights claim or establishment clause claim?

2. Did the District Court abuse its discretion by denying Plaintiff-Appellant's motion for a preliminary injunction and temporary restraining order?

## STATEMENT OF THE CASE

Plaintiff-Appellant claims an unqualified right to exempt itself from constitutional abortion regulations so they can take part in a Satanic Abortion Ritual unburdened by important State interests they deem "tyrannical." Appellant (as well as named Plaintiff Ann Doe ("Doe")) initially filed suit objecting to certain informed consent statutes because they disagreed with them as a matter of policy and science. ROA. 9-.26. Appellant and Doe then filed a Second Amended Complaint, substituting previous Defendants for the Texas Health and Human Services Commission ("HHSC") and Executive Commissioner of HHSC Cecile Young ("Young") (collectively, "Appellees"). ROA. 154-.172. The District Court then stayed the case pending a ruling by the United States Supreme Court in *Dobbs v. Jackson Women's Health Organization*. ROA. 256-.257. Following the ruling in *Dobbs*, the District Court ordered Appellant and Doe to amend their complaint again. ROA. 265-.266. On August 22, 2022 Appellant and Doe filed their [Third] Amended

Complaint and additionally filed a motion for a temporary restraining order and a preliminary injunction. ROA. 267-.288. They allege unspecified "religious statutes" violate both the free speech and free exercise clause as well as the establishment clause. *Id.* Specifically, they claim having an abortion is a Satanic ritual and aligns with one of the seven tenants of that sect. *Id.* At no point does the live Amended Complaint explain which statutes it challenges, nor does it describe with any specificity how Appellees interfered with a religious practice. See generally *id.* The only relief Appellant and Doe sought was to order Appellees to recognize a religious exemption for abortion. *Id.* The District Court subsequently denied Appellant's request for a temporary restraining order and preliminary injunction. ROA. 392-.394. Specifically, the Court found Appellant's lack of urgency in filing 59 days after the ruling in *Dobbs*, combined with Appellant's failure even to attempt establishing the second, third, or fourth preliminary injunction factors, did not demonstrate entitlement to such relief. ROA. 394. On appeal, Appellant seeks review of the preliminary injunction denial. ROA. 396.

## SUMMARY OF THE ARGUMENT

1. Appellant does not have standing to bring any of its claims for the following reasons: (1) Appellant does not allege any legally cognizable injury-in-fact, (2) Appellant cannot fairly trace any purported injury to Appellees, (3) Appellant

cannot show the requested relief would actually redress its purported injuries, (4) Appellees are immune from Appellant's claims because the *Ex Parte Young* exception does not apply to the instant set of allegations. Associational standing requires a showing that an entity's individual members could establish standing on their own. Since none of Appellant's individual members could establish standing, and because Appellant has not pled standing in its own right, Appellant has not met its burden to establish Article III standing. Therefore, the Court should vacate the order on preliminary injunction, and remand to the District Court with instructions that the case be dismissed for lack of jurisdiction.

2. Assuming, *arguendo*, the Court finds Appellant has standing, the District Court's denial of the preliminary injunction, which Appellant belatedly requested, was well within its discretionary authority. The District Court held Appellant offered no argument as to why a preliminary injunction or a temporary restraining order was warranted. Appellant failed even to invoke the appropriate standards, much less demonstrate the standards had been met. The burden of persuasion for a temporary restraining order or preliminary injunction rests squarely on the party seeking said relief. Appellant failed to meet all factors as required. Thus, it was well within the

District Court's discretion to deny Appellant's request for a temporary restraining order and preliminary injunction.

## STANDARD OF REVIEW

This Court reviews questions of standing *de novo*. *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). This standard pertains to the jurisdictional argument in Part I, infra at 5-11.

"Extraordinary circumstances" must be present before the Court will reverse the denial of a preliminary injunction. *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989). Denial of a preliminary injunction is reviewed for abuse of discretion, with factual findings reviewed for clear error and legal conclusions reviewed *de novo*. *Robinson v. Hunt County*, 921 F.3d 440, 451 (5th Cir. 2019). A district court's factual findings are not clearly erroneous if they are plausible in light of the record as a whole. *Moore v. Brown*, 868 F.3d 398, 403 (5th Cir. 2017). This standard pertains to the argument in Part II, infra at 12-23.

## ARGUMENT

I.   **Appellant's Lack of Standing and Appellees' Immunity**

   *A. Appellant Cannot Establish Standing*

To have standing, an association or organization must satisfy the well-known requirements of *Lujan*:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*OCA-Greater Houston v. Tex.*, 867 F.3d 604, 609–10 (5th Cir. 2017).

An entity can establish an injury-in-fact through its constituent members, called "associational standing," or in its own right, called "organizational standing." *Id.* at 610. Associational standing requires showing the entity's members have standing, and that the interests the entity seeks to protect through litigation are germane to its purpose. *Id.* Organizational standing allows an entity to establish standing in its own name if it "meets the same standing test that applies to individuals." *Id.* Appellant does not plead organizational standing and cannot show associational standing.

"[S]tanding is not created by a declaration in court pleadings." *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008). "This means that the plaintiff must clearly allege facts at the pleading stage that demonstrate each criterion." *Castro*, 2021 WL 1393857, at *1 (emphasis added). Appellant's members

6

cannot independently meet the Article III standing requirements, and Appellant therefore lacks standing.

### 1. <u>**Appellant has alleged no legally cognizable injury.**</u>

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). Appellants allegations in this case are summarily lacking of the requisites to establish standing, and instead consist of the conclusory statement that "religious statutes" allegedly interfere with its member's "ritual." ROA. 267-273. Appellant thus relies on the unsupported statement that a member's abortion is a constitutionally-protected religious experience, and wholly fails to allege with any clarity of specificity how any action by Appellees invaded that experience. Vague and unsupported allegations that Appellees "interfered" with an abortion do not meet Appellant's burden of making a concrete and particularized showing of an injury. Nor do such conclusory vagaries constitute "actual or imminent" harm, as opposed to purely conjectural and hypothetical. Appellant's allegations are indistinguishable from "generalized grievances" with Texas law. Barber v. Bryant, 860 F.3d 345, 354 (5th Cir. 2017). Generalized grievances cannot satisfy the requirements of Article III

standing. Id. Accordingly, Appellant does not show a legally cognizable injury-in-fact as required to meet its burden of Article III standing.

### 2. <u>Appellant does not and cannot establish any alleged injury is traceable to Appellees.</u>

Traceability requires "something more than conjecture." *Envt. Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357, 368 (5th Cir. 2020). Appellant alludes vaguely that Appellees "prohibits abortion" and that they "stopped the ritual," but Appellant does not describe a single "enforcement" action that either Appellee has ever taken. ROA. 269-.270. Further, it claims Appellees "enforced the religious statutes"[2] yet fails to provide any details as to how Appellees actually "enforced" said statutes. *Id.* Without more than conclusory allegations of enforcement, Appellant has failed to meet its burden of establishing traceability as required to establish Article III standing.

---

[2] Appellant does not specify which "religious statutes" it complains of or which Appellees allegedly enforced. The only citation to specific statutes occurs in the Prayer of its Rule 65 Motion. ROA. 287-.288. Appellant only makes vague references to statutes that "criminalize" abortion. Appellant's Brief at 17. Thus, for purposes of this brief, Appellees assume Appellant complains of the Texas Health and Safety Code Section 170A.001*, et seq.*

### 3. **Appellant does not and cannot establish the requested relief would redress its grievances.**

For Appellant to show standing, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Here, Appellant's requested relief seeks an injunction that requires "Young to recognize a religious exemption for abortion." ROA. 272. However, assuming arguendo that Appellant prevails in this litigation, physicians who perform abortions in Texas would still be subject to criminal prosecution. *See* TEX. HEALTH & SAFETY CODE § 170A.001, *et seq*. Appellees have no connection to or control over any of the district attorneys or other prosecutors throughout the state of Texas. *Id.* Accordingly, "[a] favorable decision would not fully redress [Plaintiffs'] purported injury and eradicate the barrier to [performing the Satanic Abortion Ritual]." *Ctr. for Inquiry, Inc. v. Warren*, 845 F. App'x 325, 329 (5th Cir. 2021). Appellant therefore "ask[s] for relief that does not remedy the claimed injury in full" and "lack[s] standing to maintain this suit." *Id.*

Accordingly, Appellant lacks standing because any alleged injury is not fairly traceable to Appellees, and Appellant cannot show its requested relief would redress Appellant's purported injuries. Thus, Appellant's claims must be dismissed.

### B. *Appellees Are Immune*

Defendant-Appellee HHSC is immune because "[s]tate agencies are entitled to Eleventh amendment sovereign immunity." *City of Austin v. Paxton*, 943 F.3d 993, 1003 (5th Cir. 2019). Appellee HHSC is a state agency. *See, e.g.*, Tex. Gov't Code § 531.021(a); *Simmons v. Smith*, 774 F. App'x 228, 229 (5th Cir. 2019) (mem.). The exception to immunity provided by *Ex parte Young* extends only to claims against "individual state officials in their official capacities." *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). Accordingly, Appellant cannot establish standing against Appellee HHSC because it is immune.

Young, as Executive Commissioner of HHSC, is also immune. While Appellant claims Young lost her official immunities based on *Ex parte Young*, that assertion is misplaced. ROA. 271-272. For essentially the same reasons that Appellant lacks standing, Young does not fall within the *Ex parte Young* exception. *See City of Austin*, 943 F.3d at 1002 ("Article III standing analysis and *Ex parte Young* analysis 'significantly overlap.'"). When challenging the constitutionality of a state statute, to fall within the *Ex parte Young* exception to Eleventh Amendment immunity, the defendant must have "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (quoting *Okpalobi v. Foster*, 244 F.3d 405, 416 (5th

Cir. 2001)). This requirement "is designed to ensure defendant is not merely being sued 'as a representative of the state, and thereby attempting to make the state a party.'" *Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507, 517 (5th Cir. 2017) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)).

As outlined above, Appellant fails even to explain which statutes it challenges, much less illustrate how Appellees have a duty to enforce such statutes. Assuming the "religious statutes" Appellant refers to are Texas Health & Safety Code provisions related to criminalizing abortion, neither Appellee has any connection to or control over prosecutors throughout Texas tasked with enforcing the State's criminal provisions. *See generally* TEX. REV. CIV. STAT. art. 4512.1-4, 4512.6, TEX. HEALTH & SAFETY CODE § 170A.002; § 171.001 *et seq,* and § 171.201 *et seq.* Appellant makes no attempt to demonstrate enforcement authority, or threatened enforcement, by Appellees of the unidentified statutes they challenge. Accordingly, Appellees retain immunity from Appellant's claims regardless of the outcome of the Court's *Ex parte Young* analysis.

Appellant lacks Article III standing required to bring its claims against Appellees. Therefore, Appellees request the Court vacate the order on preliminary injunction, and remand to the District Court with instructions that the case be dismissed for lack of jurisdiction

11

## II.    Denial of a Preliminary Injunction Was Not an Abuse of the District Court's Discretion

Should the Court find Appellant has standing, Appellees will illustrate the District Court was well within its discretion when denying Appellant's request for a preliminary injunction.

The prerequisites for obtaining a preliminary injunction are well-established, requiring a plaintiff to show:

(1) a substantial likelihood of success on the merits;

(2) a substantial threat of irreparable injury;

(3) the threatened injury to the movant outweighs the threatened harm to the party sought to be enjoined; and

(4) granting the injunctive relief will not disserve the public interest.

*See, e.g.*, *Bluefield Water Ass'n, Inc. v. City of Starkville*, 577 F.3d 250, 252-53 (5th Cir. 2009). Failure to establish any one of the factors dooms the request. *City of Dallas v. Delta Airlines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017). Appellant had to make a "clear showing" that it could meet all prerequisites to such relief. *Mazurek v. Armstrong*, 520 U.S. 968, 973 (1997) (per curiam).

Preliminary relief is "an extraordinary remedy . . . never awarded as of right." *Benisek v. Lamone, 138 S. Ct. 1942, 1943 (2018)*. In seeking the extraordinary remedy of setting aside "religious statutes" that related to abortion, Appellant bore a "heavy

burden" as to each prerequisite. *Enterprise Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). The burden is even heavier when, as in this case, the requested preliminary relief is mandatory rather than prohibitory. That is because such relief is tantamount to the relief that would be obtained only after a full trial on the merits. *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998).

If the Court finds Appellant has standing, then the Court should affirm the District Court's denial of preliminary injunction because Appellant wholly fails to establish any of the four requisite elements for such relief.

### A. Appellant Cannot Show a Substantial Likelihood of Success on the Merits

Appellant fails to show a substantial likelihood of success on the merits. When considering the likelihood of success, courts look to whether there is a sufficient likelihood the State will ultimately fail to prove its regulation constitutional. *Byrum*, 566 F.3d at 446 (citing *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004)). A State's ability to show justification for the statutes' constitutionality harms the appellant's ability to show a substantial likelihood of success on the merits. *Cf. id.*

### 1. Count 1: Hybrid Free Speech/Free Exercise Claim.

Appellant entirely fails to illustrate how its speech is restricted by the unspecified "religious statutes." *See generally* ROA. 267-.273. Assuming the statutes

in question are those that fall under the Texas Health & Safety Code—which Appellant's live pleading fails to specify, and which Appellant only lists in the prayer of its Rule 65 motion (ROA. 287-.288)—Appellant is neither required to speak nor restrained from speaking by the challenged statutes. Thus, Appellant's claim amounts to nothing more a free-exercise claim." *Employment Division v. Smith*, 494 U.S. 872, 882 (1990).

### a. Appellant fails to establish it is likely to succeed on a free exercise claim.

Under a free-exercise claim "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Smith*, 494 U.S. at 879 (quoting *United States v. Lee*, 455 U.S. 252, 263 n.3 (1982) (Stevens, J., concurring)). In other words, under *Smith*, "to say that a nondiscriminatory religious-practice exemption is permitted, or even that it is desirable, is not to say that it is constitutionally required[.]"*Id.* at 890. Because the challenged "religious statutes" apply generally and neutrally to all abortion-seekers, Appellant is not entitled to a religious exemption that is tailored to

its particular system of beliefs, even if such beliefs are entitled to First Amendment protection.[3]

Moreover, the Supreme Court held in *Dobbs* that a law regulating abortion must be sustained if there is a rational basis on which the legislature could have thought it would serve legitimate state interests. *Dobbs v. Jackson Women's Health Org.*, 213 L. Ed. 2d 545, 142 S. Ct. 2228, 2284 (2022).

Accordingly, the Court should find Appellant entirely failed to allege a likelihood of success on the merits and affirm the District Court's denial of a preliminary injunction as it relates to Appellant's free-exercise claim.

### b. Appellant fails to establish it is likely to succeed on a Hybrid Free Speech/Free Exercise claim.

Even if Appellant plausibly articulated a "hybrid rights" theory, or if a heightened level of scrutiny applied to abortion regulations, those claims still fail. In such "hybrid" religion-plus-speech cases, the government must demonstrate more than merely a reasonable relation to a substantial state interest to sustain the infringement on First Amendment expression. *See Wisconsin v. Yoder*, 406 U.S. 205, 233 (1972); *Society of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1216 (5th Cir. 1991); *Alabama & Coushatta Tribes v. Big Sandy Sch. Dist.*, 817 F.Supp. at 1332 (E.D.

---

[3] Appellees have not conceded the applicability of Free Exercise protections to Appellant's "nontheistic" system of beliefs, and expressly reserved the right to make such argument at any time.

Tex. 1993). However, courts have consistently rejected such "hybrid" claims when the State's interest, through inference or demonstration, regulates conduct or actions that pose a threat to public safety, order, peace, and the physical or mental health of a child. *Yoder*, 406 U.S. at 230; *Braunfeld v. Brown*, 366 U.S. 599, 604 (1961) ("even when the action is in accord with one's religious convictions, [it] is not totally free from legislative restrictions."). The State's interest in regulating abortion is clearly related to the physical and mental health of children because it ensures "respect for and preservation of prenatal life at all stages of develop." *Dobbs*, 213 L. Ed. 2d at 545 (2022). Accordingly, the state's interests meet both the rational basis and the heightened standard applied to "hybrid rights" cases (even assuming such a heightened standard applies to abortion laws following *Dobbs*). The Court should therefore affirm the District Court's denial of Appellant's preliminary injunction.

**2.** **Count 2: Establishment Clause Claim.**

Just as Appellant failed to establish a substantial likelihood of success on the merits as related to its free speech claims, it also fails to establish its Establishment Clause claims. A legislative enactment does not contravene the Establishment Clause if it has a secular legislative purpose, if its principal or primary effect neither advances nor inhibits religion, and if it does not foster an excessive governmental entanglement with religion. *Harris v. McRae*, 448 U.S. 297, 319 (1980). Further, a

statute does not violate the Establishment Clause because it "happens to coincide or harmonize with the tenets of some or all religions." *McGowan* v. *Maryland*, 366 U.S. 420, 442 (1961). In *Harris v. McRae,* the Supreme Court upheld the Hyde Amendment's ban on publicly funded abortions because it considered abortions to be as much of a reflection of "traditionalist" values towards abortion, as it is an embodiment of the view of any particular religion. *Harris v. McRae*, 448 U.S. 297, 320 (1980).

In fact, the Supreme Court found an "unbroken tradition of prohibiting abortion on pain of criminal punishment" persistent throughout American history. *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2254 (2022). "Law[s] regulating abortion, like other health and welfare laws, [are] entitled to a strong presumption of validity." *Id*. at 2284 (citing *Heller v. Doe*, 509 U. S. 312, 319 (1993)). Here, the "religious statutes" in question, again assuming Appellant is referencing the Texas Health & Safety Code, make no reference to faith. *See* TEX. HEALTH & SAFETY CODE § 170A.001, *et seq*. Appellant makes the conclusory and unsupported claim that "other religion holds sway over legislators" as justification for the Establishment Clause claim. ROA. 269. However, the Supreme Court has cautioned against inquiries into legislative motives stating they "are a hazardous matter."

*Dobbs,* 142 S. Ct. at 2256 (2022) (citing *United States v. O'Brien,* 391 U. S. 367, 383 (1968).

Ultimately, Appellant's contention that these are "religious statutes" only enacted to "force pregnancy on the congregants" completely ignores the State's legitimate secular interests in protecting maternal health and safety, elimination of particularly gruesome medical procedures, the preservation of the integrity of the medical profession, mitigation of fetal pain, and protection of fetal life. *Id.* at 2284; ROA. 269.

Because the "challenged statutes" (as Appellees understand them) have a secular legislative purpose, they do not violate the Establishment Clause. Accordingly, Appellant has failed to prove a substantial likelihood of success on the merits for either of its claims. As such, assuming *arguendo* the Court may find Appellant has standing, the Court should then find the District Court acted within its discretion by denying Appellant's request for a preliminary injunction and temporary restraining order.

## B. *Appellant's Unnecessary Delay Precludes Establishing Irreparable Harm*

The Supreme Court's decision in *Benisek* supports the District Court's correct finding that Appellant's delay in seeking preliminary injunctive relief

defeated Appellant's argument regarding irreparable harm. *See generally Benisek, 138 S. Ct. at 1944 (2018)*. This Court should affirm the District Court's ruling.

A party requesting emergency relief of the sort Appellant seeks must show "reasonable diligence." *Benisek*, 138 S.Ct. at 1944. A long delay after the threatened harm "may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction." 11A Wright & Miller, Fed. Prac. & Proc. § 2948.1 (3d ed.). Absent a good explanation, substantial delay "militates against the issuance of a preliminary injunction." *Gonannies, Inc. v. Goupair.com, Inc.*, 464 F.Supp.2d 603, 609 (N.D. Tex. 2006).

*Benisek* is particularly pertinent on this point. In that case, the claim of the movants seeking a preliminary injunction was based on the First Amendment. *See Shapiro v McManus*, 203 F.Supp.3d 579 (D. Md. 2016) (3-judge court) (underlying case to *Benisek* discussing associational rights claim). The movants there "could have sought" a preliminary injunction "much earlier." *Benisek*, 138 S.Ct. at 1944. When they belatedly filed a request for emergency relief, the *Benisek* movants sought exceptionally quick action by the court because of impending deadlines. *Id*. at 1945. The movants' delay resulted from events within their control: "namely, their failure to plead" their claims for injunctive relief over an unexplained, extended period of time. *Id*. at 1944. The

Supreme Court concluded the movants' "unnecessary" delay supported denial of emergency relief. *Id.* Similarly in this case, Appellant belatedly sought "emergency relief," but the unexplained delay in seeking such relief belies any actual "emergency." As a result, denial of such relief is as appropriate here as it was in *Benisek*.

Appellant's delay in seeking injunctive relief was unnecessary and unexplained. The Court had a status conference on July 7, 2022, shortly after the Supreme Court's decision in *Dobbs*. ROA. 392. While there was an agreed date to file said preliminary injunction, August 22, 2022, nothing precluded the Appellant from seeking earlier and emergency relief, or from seeking leave to do so. ROA. 392. Appellant claims it was a letter issued by The Office of the Attorney General of Texas, stating the effective date of Texas' Human Life Protect Act, spurred the emergency nature of its motion. Appellant's Brief at 14. However, that letter was issued on July 27, 2022. ROA. 312. Appellant waited twenty-six days after issuance of the letter to file anything with the court. ROA. 312, ROA. 392.

Despite its delay in filing, and before Appellees' deadline to respond, Appellant then pushed the district judge for extremely quick action and threatened mandamus activity because it had been "over a week without a ruling on the matter." ROA. 386-.391.

The District Court acted well within its broad discretion when it took these facts into account and concluded that Appellant had fallen short of meeting the heavy burden to demonstrate irreparable injury. *Benisek* alone refutes Appellant's argument that mere invocation of the First Amendment eliminates the need to show irreparable injury and provides a blanket excuse for delay in seeking relief. *See* Appellant's Brief at 27-28. While the loss of First Amendment freedoms can constitute irreparable injury, the assertion of First Amendment rights does not automatically require a finding of irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012). Even if Appellant was entitled to a presumption of irreparable harm from a putative loss of First Amendment freedoms, its delay in seeking relief rebuts such a presumption.

"[D]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction." *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995). "Absent a good explanation, ... a substantial period of delay ... militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *Id.* Evidence of an undue delay in bringing suit may be sufficient to rebut the

presumption of irreparable harm. *See Polymer Techs., Inc. v. Bridwell,* 103 F.3d 970, 974 (Fed.Cir.1996).

As Appellant proffers no explanation for its unnecessary delay, any presumption of irreparable injury is effectively mitigated based on the lack of urgency in its filings. *See generally* ROA. 392.

Should the Court find Appellant has standing, the court should affirm the District Court's denial of preliminary injunctive relief on the ground that Appellant failed the irreparable injury test. Further inquiry into the other factors, while unnecessary as all factors are required, is provided below for the Court's consideration.

### C. *The Alleged Injury Does Not Outweigh the Harm an Injunction Will Cause and Is Not in the Public Interest*

Appellant's alleged harm does not outweigh the harm wrought by an injunction precluding the State's enforcement of it own laws, and would disserve the public interest. *See Ingebretsen on Behalf of Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 278 (5th Cir. 1996); *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) ("the district court weighs the factors against one another in a sliding scale analysis, which is to say the district court must exercise its discretion to determine whether the balance of harms weighs in favor of the moving party

or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied.").

Appellant's only explanation of harm, as also outlined above (*See* Part I, supra at 5-11), is that "[the] congregants of The Satanic Temple were harmed by a State's compelling adherence to a foreign religion's shaming ritual." Appellant's Brief at 17. However, at no point does Appellant explain the nature of any such harm. *See generally* Appellant's Brief. Instead, it relies on conclusory allegations that Young is somehow the enforcer of said "religious statutes." *Id.*

Further, any threatened hypothetical injury is clearly outweighed by the State's legitimate secular interests in protecting maternal health and safety, eliminating particularly gruesome medical procedures, preserving of the integrity of the medical profession, mitigating of fetal pain, and protecting of fetal life. *Dobbs*, 142 S. Ct. at 2284 (2022).

Appellees, and the public at large, have a vested interest in protecting those secular interests. Thus, Appellant has failed to show how its alleged temporary deprivation is an irreparable harm and the District Court did not err in denying Appellant's motion for a preliminary injunction and temporary restraining order.

## CONCLUSION

For the foregoing reasons, Appellee respectfully prays this Court hold that Appellant lacks standing, vacate the order on preliminary injunction, and remand to the District Court with instructions that the case be dismissed for lack of jurisdiction. In the alternative, should the Court conclude that Appellant has standing, Appellees request the Court affirm the District Court's denial of the preliminary injunction.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

CHRISTOPHER D. HILTON
Chief, General Litigation Division

*/s/ Ryan G. Kercher*
**RYAN G. KERCHER**
Lead Counsel
Deputy Chief, General Litigation
Division
Texas Bar No. 24060998
Southern Bar No. 882329

*/s/ Heather L. Dyer*
**HEATHER L. DYER**

Assistant Attorney General
General Litigation Division
Texas State Bar No. 24123044
Southern Dist. No. 3678443

Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Tel: (512) 463-2120
Fax: (512) 320-0667
Ryan.kercher@oag.texas.gov
Heather.dyer@oag.texas.gov

***Counsel for Defendants-Appellees***

# CERTIFICATE OF SERVICE

I certify that on February 3, 2023, the foregoing document was served via the Court's CM/ECF system to all counsel of record.

*/s/ Ryan G. Kercher*
**RYAN G. KERCHER**
Assistant Attorney General

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), and 5th CIR. R. 32.1: this document contains 4,354 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in Equity Text A, 14-point size font for the body of the text, and 16-point font for the headings.

*/s/ Ryan G. Kercher*
**RYAN G. KERCHER**
Assistant Attorney General